**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

CATHERINE L. WALKER,                              No.  C 07-03184 SBA

          Plaintiff,                              **ORDER**

    v.                              [Docket Nos. 12, 13]

MICHAEL J. ASTRUE, *Commissioner of*
*Social Security*

          Defendant.

_____

**REQUEST BEFORE THE COURT**

     Before the Court is plaintiff Catherine Walker's Motion for Summary Judgment (the "Motion") [Docket No. 12] and defendant's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment (the "Cross-Motion") [Docket No. 13].  Walker appeals defendant's decision that she is neither disabled nor eligible for disability benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 301 *et seq*.  For the reasons discussed below, the Court finds there is substantial evidence to support the residual functional capacity (the "RFC") it determined for Walker.  But, the Court finds defendant applied the wrong legal standard in determining her RFC and in determining her past relevant work.  The Court thus GRANTS in part and DENIES in part the Motion, GRANTS in part and DENIES in part the Cross-Motion, REVERSES defendant's decision regarding whether Walker is eligible for disability benefits, and REMANDS this matter to defendant to make findings and redetermine her RFC.

**BACKGROUND**

**I.     1961 through 2003**

     Plaintiff Catherine Walker was born on April 20, 1961, and is 47 years old.  Docket No. 11 (Admin. R. ("AR")) at 65.  She has a high school education and work experience as a bookkeeper, a clerical-file clerk, and a clerical worker.  AR at 79.  Around August 1999, she began experiencing pain in her neck and shoulders which was exacerbated by lifting a heavy garbage bag.  AR at 140.  She subsequently had a cervical x-ray on September 27, 1999, with normal results.  AR at 140, 190.

1   Heidi Shale, M.D. of East Bay Neurology examined Walker and wrote a report on October 5, 1999.

2   AR at 192.  Dr. Shale, a neurologist, found no neurological abnormalities, but recommended

3   medication and physical therapy for pain control.  AR at 194.  Subsequently, physiatrist Mark Chan,

4   M.D. diagnosed fibromyalgia and prescribed continued physical therapy.  AR at 140-141.  The

5   treating evidence notes from her primary physician, Andrew Wallach, M.D., dated June 7, 2000,

6   state that Walker's pain recurred after she returned from a trip and resumed bookkeeping.  AR

7   at 198.

8        In May 2001, rheumatologist Brian Kaye, M.D., examined Walker and diagnosed chronic

9   musculoligamentous pain.  AR at 151.  Dr. Kaye stated it could also be called fibromyalgia,

10  myofacial pain syndrome, or chronic cervical strain.  AR at 151.  In June 2004, Dr. Kaye examined

11  Walker once again and affirmed his diagnosis of chronic nonspecific musculoskeletal pain.  AR

12  at 149.  Orthopedist Mathias Masem, M.D., performed a consultative examination on September 28,

13  2001, pursuant to a referral from Dr. Wallach.  AR at 140.  Dr. Masem reported there was no clinical

14  evidence of impingement or rotator cuff pathology and no evidence of a neurological cause for her

15  symptoms.  AR at 142.  Pain specialist Brendon Morley, M.D. examined Walker in October 2001

16  and diagnosed "probable myofascial pain syndrome."  AR at 145.  He noted that Walker reported

17  pain, but felt further neurologic or discogenic testing would likely be negative.  AR at 146.

18       On April 21, 2003, Dr. Wallach's chart notes state Walker's fibromyalgia symptoms had

19  increased because she was selling her house after a separation from her husband and had a deadline

20  to move furniture.  AR at 227.  She pushed herself to do more physical labor and had symptoms.

21  AR at 227.  On May 21, 2003, Walker moved into a new apartment.  AR at 225.  From June 9

22  through June 24, 2003, she attended a religious retreat, and she cancelled a June 26, 2003 visit with

23  Dr. Wallach.  AR at 223, 225.

24  **II.   2004**

25       Dr. Wallach noted that in February 2004, Walker was taking 14 units at school towards an

26  AA degree.  AR at 213.  In March 2004, she was much more active, but increased activity caused

27  flares. AR at 210.  During a visit with Dr. Wallach in March 2004, Walker requested a reevaluation

28  by Dr. Kaye regarding her pain issues.  AR at 209.

On or about April 5, 2004, Walker filed an application for Disability Insurance Benefits ("DIB") with the Social Security Administration (the "SSA") alleging disability based pain or fibromyalgia.  AR at 31, 34-38, 78.  In a disability report the SSA found that Walker met the insured status requirements for Title II benefits as of her alleged onset of disability on December 31, 1999.  AR at 85.  She was insured for DIB until September 2004.  AR at 85.

In a Pain Questionnaire dated April 15, 2004, Walker indicated she suffered from pain in her neck, both sides, right arm, right hand, left upper-arm, left hand, right shoulder, front right breast rib cage, and both hips.  AR at 88.  She said her pain could be brought on by walking, carrying, sitting, typing, writing, lifting, cleaning, jerky transportation, and bending tasks.  *Id*.  She also stated she experienced flares which lasted 12-24 hours and adhered to strict bed rest and extra medication to treat them.  *Id*.  Walker indicated rest did not relieve her pain.  *Id*.  Walker was prescribed Valium, hydrocodone, lodine, and synthroid and stated it kept her pain in check unless she "moves wrong." *Id*.  Due to her pain, she said she could only walk about six blocks and could do one or two household chores daily, such as laundry, changing the bedding, and dusting.  *Id*.  She said she could spend one to one-and-a-half hours studying daily, and was a full-time student attending night classes.  *Id*.  She said she found it difficult to sit, lie down, walk, hold, push, pull, bend, type, carry, or perform any repetitive tasks.  *Id*.  Lastly, she indicated she was able to stand 15 minutes at a time and could sit in ergonomic chairs for one to two hours with frequent breaks.  AR at 90.  In June 2004, Dr. Kaye examined Walker again and affirmed his diagnosis of chronic nonspecific musculoskeletal pain.  AR at 149.

On June 29, 2004, the SSA sent Walker to consultative examiner Calvin Pon, M.D. who examined Walker and diagnosed: (1) by history, that she was diagnosed as having fibromyalgia by a rheumatologist in 2001; (2) chronic neck pain possibly related to her history of fibromyalgia, or alternatively, possible cervical disc disease and/or degenerative changes of the cervical facet joints; (3) cervical radicular symptoms, but upon examination, no hard objective evidence of right cervical root impingement; (4) chronic shoulder pain, possible bursitis or tendinitis possibly related to her history of fibromyalgia or any combination of these; and (5) chronic bilateral hip pain possibly related to her history of fibromyalgia or bursitis, and possible degenerative changes.  AR at 155.

Dr. Pon found Walker had a capacity for light work or sedentary work, could occasionally climb ladders and reach bilaterally, and could perform pushing/pulling with right arm hand controls on an occasional to frequent basis.  AR at 155.

On July 26, 2004, the SSA referred Walker for an RFC physical assessment to B. Camille Williams, M.D.  AR at 156-163.  Dr. Williams found Walker could occasionally lift or carry 20 pounds, could frequently lift or carry 10 pounds, could stand or walk about six hours in an eight-hour day, could sit for a total of about six hours in an eight-hour day, and was unlimited in her ability to push and pull.  AR at 157.  Dr. Williams also determined that Walker's symptoms were attributable to a medically determinable impairment.  AR at 161.

**III.    2005**

On March 29, 2005, Dr. Wallach filled out a fibromyalgia RFC questionnaire.  AR at 248. Question 11 asked, "Are your patient's impairments (physical impairments plus any emotional impairments) reasonably consistent with the symptoms and functional limitations described in this evaluation?"  AR at 250.  Dr. Wallach's response was "subjective answer."  *Id*.  In his March 29, 2005 treatment notes, Dr. Wallach explained that he answered the questions with Walker's assistance, and stated, "I do not see how I could answer these.  They are her subj [sic] responses."  AR at 246.

Walker also traveled to Arkansas for 30 days in October 2005 to help at shelters after hurricane Katrina.  AR at 283.  She worked approximately four or five days a week for one or two hours a day.  *Id*.  She traveled by train with a sleeper because it was easier for her to move around on a train than on an airplane.  AR at 285.

**IV.    2006**

After the SSA affirmed its denial on reconsideration, on November 5, 2004, Walker timely requested a hearing before an Administrative Law Judge ("ALJ"), and had one on March 8, 2006. AR at 41-45, 46-47.  Joel Roberts, Esq. represented her.  AR at 257.  In addition, an impartial vocational expert testified.

At her hearing, Walker testified she has difficulty sleeping and experiences excessive pain one or two days a week, causing her to take higher doses of medication to knock herself out until the

4

pain subsides. AR at 274, 276. She also testified she has limited range of motion of her head and can only move it "a quarter in each direction to the side" and half way down. AR at 277. Walker stated she can hold her head steady in one position for 10 to 15 minutes and can lift up to a pound. AR at 277, 281. She also stated she felt she could sit for half an hour and can comfortably walk four or five blocks. AR at 287, 288. And, she said she can drive for approximately 20 minutes, but cannot parallel park. AR at 280.

Walker also testified she has not worked since 1999 except for volunteering at two facilities: twice a week at one, and five hours once a week at another. AR at 268-269. Walker testified she was currently enrolled in community college. AR at 269. She spent six or seven hours in class per week and was enrolled in three classes a semester. AR at 270. She performed activities in pieces, and used disabled student services when she had flare-ups of pain once or twice a week. AR at 271. She took Valium for muscle spasms, Norco for chronic pain, and wore a Fentanyl duragesic patch. AR at 271. She used a laptop instead of handwriting and could not sit for long periods or sustain repetitive activities. AR at 272. On a daily basis, Walker could perform 15 to 20 minutes of light chores, an hour to an hour-and-a-half of homework, and took an evening class. AR at 275, 281. She left her house for classes, to buy groceries, and sometimes went to church or a movie. AR at 276.

Walker testified she had pain in her right shoulder, right arm, part of her left arm, her neck, hips, and lower back. AR at 286. She additionally experienced mild headaches on a daily basis and was depressed a couple of times a month. AR at 287. She was able to care for her personal needs, but noted if she did not have a washer and dryer she would need to go to a laundromat, which would be difficult for her. AR at 282. She was hypersensitive to weather. AR at 283.

On June 27, 2006, the ALJ affirmed the SSA's denial of her disability benefits. AR at 28. Walker requested a review by the SSA's Appeals Council. AR at 17. On April 20, 2007, the Council denied her request. AR at 7-9.

**V.     2007**

On June 18, 2007, Walker timely sued the SSA for judicial review under 42 U.S.C. § 405(g). *See* Docket No. 1. On November 19, 2007, Walker filed her motion for summary judgment alleging five errors for review. Specifically, she claimed the ALJ did not give adequate weight to her treating

physician's opinions when assessing her residual functional capacity ("RFC"), erred in claiming the RFC was unsupported by the physician's medical records, did not apply the criteria set forth in Social Security Ruling (SSR") 96-7p in evaluating Walker's credibility, failed to properly apply SSR 96-6p and 96-8p in evaluating Walker's ability to work, and improperly relied on the testimony of the vocational expert. Mot. at 6-7.

**LEGAL STANDARD**

**I.      Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d at 1146.

In responding to a properly supported summary judgment motion, the non-movant cannot merely rely on the pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002); *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 568 (9th Cir. 2004).

These same standards apply when parties file cross-motions for summary judgment. *See Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *ACLU of N.M. v. Santillanes*, 506 F. Supp. 2d 598, 624 (D.N.M. 2007).

## II.       Standard of Review

The "substantial evidence" standard governs a district court's review of a final decision made by the Commissioner of the SSA.  As 42 U.S.C. § 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . .  As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the rehearing.  The findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence*, shall be conclusive . . . .

42 U.S.C. § 405(g) (emphasis added); *Udd v. Massanari*, 245 F.3d 1096, 1100 (9th Cir. 2001); *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1989).  When the Appeals Council declines to review an ALJ's decision, it stands as the Commissioner's final decision.  *Bass v. Social Sec. Admin*., 872 F.2d 832, 832 (9th Cir. 1989).

A court may reverse an ALJ if his or her findings "are based on legal error or are not supported by substantial evidence."  *McCartney v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Evans*, 110 F.2d at 1483 (quoting *Flaten v. Sec'y of Health and Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995)).  "Substantial evidence is 'more than just a mere scintilla,' but 'less than a preponderance.' "  *Evans*, 110 F.2d at 1483 (quoting *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted)).  "If the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision [a court] must affirm."  *McCartney*, 298 F.3d at 1075.

## III.      The Five-Step Disability Inquiry

To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that: (a) the claimant suffers from a medically

determinable physical or mental impairment that can be expected to result in death or
that has lasted or can be expected to last for a continuous period of not less than
twelve months; and (b) the impairment renders the claimant incapable of performing
the work that the claimant previously performed and incapable of performing any
other substantial gainful employment that exists in the national economy.  *See* 42
U.S.C. § 423(d)(2)(A).  If a claimant meets both requirements, he or she is
"disabled."

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see* 42 U.S.C. §§ 416(i), 423(d), 1382c(3)(A).

"The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled [within the meaning of the Social Security Act]."  20 C.F.R. § 404.1520.  The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five."  *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The five steps of the inquiry encompass establishing whether:

(1)     The claimant is presently working in a substantially gainful activity.  If so, then the claimant is not disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.920(b); *see Bustamante*, 262 F.3d at 954.

(2)     The claimant's has a severe impairment.  If not, then the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b); *see Bustamante*, 262 F.3d at 954.

(3)     The impairment meets or equals one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1.  If so, then the claimant is disabled.  *See* 20 C.F.R. § 416.920(d); *see Bustamante*, 262 F.3d at 954.

(4)     The claimant is able to do any work that he or she has done in the past.  If so, then the claimant is not disabled.  *See* 20 C.F.R. § 416.920(e); *see Bustamante*, 262 F.3d at 954.

(5)     The claimant is able to do any other work.  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. § 416.920(f); *see Bustamante*, 262 F.3d at 954.

**ANALYSIS**

The ALJ used the required five-step sequential framework to determine whether Walker was

disabled. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found Walker had not engaged in a substantial gainful activity during the relevant period. AR at 24. At step two, the ALJ concluded Walker "has a medically determinable impairment that limits her ability to function more than minimally: fibromyalgia  v. chronic pain." *Id*. At step three, the ALJ found Walker did not have an impairment that met or equaled one of the listed impairments in the regulations. *Id*. At step four, the ALJ concluded that Walker was not able to perform past relevant work. AR at 26. At step five, the ALJ found Walker could still perform other work in the national and local economy as a hostess, lobby/security guard, or an information clerk, based on a residual functional capacity (the "RFC") determination of light work. AR at 28.

**I.    The ALJ erred in determining Walker's residual functional capacity.**

For the following reasons, the Court holds the ALJ erred in determining Walker's RFC.

**A.    Legal Standard**

In assessing whether a claimant is disabled, the SSA determines his or her RFC and his or her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If he or she can still do his or her past relevant work, the SSA will find he or she is not disabled. *Id*. The RFC determination precedes the past relevant work determination. *Id*. § 416.945(a)(5). In this case, the ALJ performed these determinations separately, first determining Walker's RFC.

A claimant's RFC is the most they can still do despite their limitations. *Id*. § 404.1545(a)(1). The SSA assesses a claimant's RFC based on all the relevant evidence in their case record. *Id*. §§ 404.1520(e), 404.1545(a)(1). The determination, however, turns solely on a claimant's medically determinable impairments, whether severe or not. *Id*. § 404.1545(a)(2); SSR 96-8p paras. 7, 17-18. It does not turn on a claimant's age, body build, e.g., height or weight, or prior activities. SSR 96-8 para. 1 ¶ 2, para. 7. While the claimant bears the burden of producing evidence for determining their RFC, the SSA will make reasonable efforts to develop a complete medical history for the pertinent twelve-month period, by contacting the claimant's providers or arranging for a consultative examination, if necessary. 20 C.F.R. §§ 404.1512(c)-(f), 404.1545(a)(3). More specific legal standards are provided as needed below.

///

1    ///

2    **B.       The ALJ's Findings**

3    After considering Walker's entire record, the ALJ concluded she had an RFC for light work,

4    could lift no more than 20 pounds at a time, could frequently lift or carry objects weighing up to 10

5    pounds, and could occasionally crouch, crawl, and kneel.  AR at 26.  He also found that she could

6    not climb ladders, ropes, or scaffolds, and could not perform overhead work with her bilateral upper

7    extremities.  *Id.*  The ALJ determined she could occasionally push, pull, perform full extension

8    reaching, do repetitive fingering, and was limited to simple repetitive tasks at an average pace.  *Id.*

9    Under these sections and rulings, the ALJ made seven sets of factual findings.  AR at 24-26.

10   First, he considered Dr. Kaye's May 2001 examination and diagnosis of chronic musculo-

11   ligamentous pain.  AR at 24.  The ALJ noted Dr. Kaye did not include a description of particular

12   trigger points, but found Walker's condition could be called fibromyalgia or chronic cervical strain.

13   *Id.*  Second, he considered Dr. Masem's September 28, 2001 consultative examination, finding no

14   clinical evidence of impingement or rotator cuff pathology.  *Id.*  Third, the ALJ considered pain

15   specialist Dr. Morley's October 2001 examination diagnosing probable myofacial pain syndrome,

16   noting that Walker reported pain, but that further neurologic or discogenic testing would likely be

17   negative in regards to a fibromyalgia diagnosis.  *Id.*  Fourth, the ALJ considered consultative

18   examiner Dr. Pon's June 29, 2004 examination, including his five findings, and his determination

19   that Walker had a capacity for light or sedentary work with occasional climbing ladders, reaching

20   bilaterally, and frequent to occasional pushing, pulling, or using hand controls with the right arm.

21   AR at 24-25.

22   Fifth, he considered treating evidence notes from June 2000 through March 2004.  He noted

23   Walker's pain recurred after she returned from a trip and resumed bookkeeping in June 2000.  *Id.*

24   He considered April 21, 2003 treating notes, stating Walker had increased fibromyalgia symptoms

25   because she was selling her house after a separation from her husband, had a deadline to move

26   furniture, was pushing herself to do more physical labor and had symptoms.  *Id.*  The ALJ also noted

27   May 2003 medical charts that stated Walker was going on vacation and would be gone 18 days.  *Id.*

28   And, he considered March 2004 treating notes stating Walker was taking 14 units in school towards

an AA degree and was active, but that increased activity caused flares.  *Id*.

Sixth, the ALJ accorded little weight to the fibromyalgia RFC questionnaire dated March 25, 2005, because Dr. Wallach answered the questions with Walker's assistance, stating, "I do not see how I could answer these, they are her subj[ective] responses."  *Id*.  The ALJ also found unpersuasive Dr. Wallach's assessment that Walker had a capacity for less than a sedentary work, as it was unsupported by his own treating records, attached to the administrative record as Exhibits 13F and 14F.  *Id*., *see* AR at 202-47.

Lastly, the ALJ considered Walker's hearing testimony, finding her only partially credible, AR at 25, for reasons discussed below.

**C.      The ALJ properly weighed all of the medical sources' opinions.**

**1.      Treating, Non-Treating, and Non-Examining Sources**

Title 20 C.F.R. § 404.1527 states, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."  20 C.F.R. § 404.1527(b).  "Medical opinions are statements from physicians and psychologists or other acceptable medical sources . . . ."  *Id*.  § 404.1527(a)(2).  An "[a]cceptable medical source . . . includes treating sources, nontreating sources, and nonexamining sources."  *Id*. § 404.1502 para. 1; *see Lester v. Chater*, 81 F.3d 821, 830, 830 n.7 (9th Cir. 1995).

A "treating source" means a physician, psychologist, or other acceptable medical source who provides or has provided a claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with them.  20 C.F.R. § 404.1502 para. 7.  An "ongoing relationship" has "a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [their] medical condition(s)."  *Id*.  A physician who supervises a team of persons who together have an "ongoing relationship" with a claimant, qualifies as a "treating physician."  *Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003).

In contrast, a "nontreating source" means a physician, psychologist, or other acceptable medical source who has examined a claimant, but does not have nor ever had an ongoing treatment relationship with them.  20 C.F.R. § 404.1502 para. 6.  This includes any acceptable medical source with whom the claimant's only relationship is or was not based on their need for treatment or

11

evaluation but only for obtaining a report to support a disability claim.  *Id*.  A "nonexamining source" means a physician, psychologist, or other acceptable medical source who has not examined a claimant, but who provides a medical or other opinion.  *Id*. para. 5.

In this case, Walker had near monthly visits to the El Cerrito Medical Group from 2003 through 2005 and usually met with Dr. Wallach.  Dr. Wallach was also designated her primary care physician at the onset of her alleged disability in 1999.  Because of Dr. Wallach's ongoing treating relationship with Walker, he qualifies as a *treating* source.  In contrast, Dr. Kaye only saw Walker twice, and Drs. Masem, Morley, Pon, and Williams only saw her once.  Thus, they were *non-treating* sources.  Regardless, all these *physicians* could provide *acceptable medical opinions*.

### 2.      A treating source is not automatically controlling.

Regardless of its source, the SSA evaluates every medical opinion received.  *Id*. § 404.1527(d).  If a treating source opinion meets certain criteria, the SSA will give it controlling weight.  *Id*. § 404.1527(d)(2).  Certain decisions, however such as determining a claimant's RFC, are *reserved* to the SSA only, and may not be controlled by any acceptable medical source.  *Id*. § 404.1527(e)(2); SSR 96-5p paras. 6, 8; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In this case, even though Dr. Wallach was a treating source, his opinion did not control the ALJ's determination of Walker's RFC.

### 3.      The six-factor weighing process.

In determining a reserved issue, an ALJ may *never* ignore medical opinions, and *must* apply the following six factors to them.  SSR 96-5p paras. 7, 9-10.  (1) Examining Relationship:  The SSA generally accords more weight to an examining source, than a non-examining source.  20 C.F.R. § 404.1527(d)(1).  (2) Treating Relationship:  The SSA generally accords more weight to a treating source, than a non-treating source.  *Id*. § 404.1527(d)(2).  In weighing such a source, the SSA will consider the length, frequency, and nature of treatment, including whether any testing was done.  *Id*. (3) Supportability:  The SSA generally accords more weight to a medical source who presents greater relevant evidence to support their opinion, particularly medical signs, laboratory findings, explanations, or reviews of other source's records and opinions.  *Id.* § 404.1527(d)(3). (4) Consistency: The SSA generally accords more weight to an opinion consistent with the record as

a whole.  *Id*. § 404.1527(d)(4).  (5) Specialization:  The SSA generally accords more weight to a specialist's opinion in their area, than a non-specialist's opinion on the same topic.  *Id*. § 404.1527(d)(5).  (6) The SSA will also consider other relevant factors, such as how well the source understands how the SSA's disability programs operate.  *Id*. § 404.1527(d)(6).

Further, the Ninth Circuit has held:

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions.  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.

*Benton*, 331 F.3d at 1037-39 (quoting *Lester*, 81 F.3d at 830 (citations omitted)).

In this case, Walker first argues the ALJ improperly rejected Dr. Wallach's opinion in favor of those of Drs. Pon and Williams, without providing specific, legitimate reasons supported by substantial evidence.  Mot. at 11-14.  Walker argues the ALJ should have given Dr. Wallach's RFC assessment more weight, because he was her treating source and his assessment was supported by his treatment records.  *Id.*  The SSA argues the ALJ provided several specific reasons for reaching his findings all of which were supported by substantial evidence.  Cross-Mot. at 5-6.

The Court first notes that Walker has identified the correct standard the ALJ must meet, in order to reject Dr. Wallach's medical opinion, because, as discussed below, it was contradicted by other physicians.  Thus, the ALJ need not provide clear and convincing reasons for doing so, but must provide specific and legitimate reasons supported by substantial evidence in the record.  *Benton*, 331 F.3d at 1037-39.

The Court next notes, though he did not describe them expressly, the ALJ properly used the factors under 20 C.F.R. § 404.1527(d) to weigh the medical opinions expressed by Drs. Pon, Williams, and Wallach, in favoring the first two over the third.  With regards to the first and second

1   factors, the ALJ noted which doctors treated or examined Walker, and considered the length,

2   frequency, and nature of their services, in weighing their opinions.  AR at 24-25.  In regards to the

3   third and fourth factors, the ALJ noted that Dr. Pon evaluated Walker and made independent clinical

4   findings that contradicted those in Dr. Wallach's RFC questionnaire.  AR at 153-155.  And, in

5   regards to the fifth and sixth factors, the ALJ accorded more weight to Dr. Pon, a specialist in

6   orthopedics, than Dr. Wallach, a general physician.  The ALJ also gave more weight to

7   Dr. Williams, as a disability determination provider, due to her familiarity with the operation of the

8   SSA's disability program.

9       In weighing the factors and thus the doctors' opinions, The ALJ explained that he gave more

10  weight to Dr. Pon's opinion, because he presented more relevant evidence supporting it, than

11  Dr. Wallach did for his, and Dr. Pon reviewed other source's records and opinions.  *Id*.  The ALJ

12  also noted that Dr. Williams made independent findings and determined the same RFC as Dr. Pon.

13  AR at 156-163.  The opinion of a nontreating source may itself be substantial evidence where it is

14  based on independent clinical findings that differ from those of the treating physician.  *Andrews v.*

15  *Shalala*, 53 F.3d 1035, 1041 (1995).  And, it is within the ALJ's province to resolve the conflict.  *Id*.

16

17      In contrast, the ALJ noted that Dr. Wallach found that Walker could do nothing, a conclusion

18  contradicted by every other medical opinion in the record.  *See*, e.g., AR at 153-155, 156-163,

19  185-188.  And, Dr. Wallach's opinion, including the RFC checklist, was determined with Walker's

20  assistance and unsupported by his own treating notes, noting Walker's increased physical labor,

21  vacations, and school course load.  *See* AR at 25, 202-247.  The ALJ properly discredited the

22  checklist evaluation.  *See Batson v. Comm'r Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)

23  (ALJ properly discredited conclusory, brief medical opinion unsupported by objective medical

24  findings or record as a whole).  Based on the foregoing, the Court finds substantial evidence

25  supports the ALJ's weighing Drs. Pon's and Williams' opinions over Dr. Wallach's, in determining

26  Clay's RFC, because the ALJ provided specific and legitimate reasons for doing so.  The Court

27  AFFIRMS the ALJ's weighing of these doctors' opinions.

28  ///

14

1    ///

2    ///

3    **D.      The ALJ  provided specific findings stating clear and convincing reasons for his**

4    **credibility determinations but erred in disregarding lay testimony.**

5    Walker argues the ALJ improperly concluded she was partially credible, based solely on her

6    testimony regarding her activities, instead of considering the record as a whole.  Mot. at 14-17.  The

7    SSA argues the ALJ properly considered Walker's daily activities and medical evidence in the

8    record when making his credibility determination.  Cross-Mot. at 7-8.

9            **1.      Legal Standard**

10    According to the SSA, "[a] symptom is an individual's own description of his or her physical

11    or mental impairment(s)."  SSR 96-7p para. 4.  To admit symptom testimony, an ALJ uses a two-

12    step process.  20 C.F.R. § 404.1529(a); SSR 96-7p para. 4; *Batson*, 359 F.3d at 1196.  First the

13    claimant must identify one or more medically determinable impairments through objective medical

14    evidence which could reasonably be expected to produce the alleged symptom.  20 C.F.R.

15    § 404.1529(a); SSR 96-7p para. 5 sub-para. 1; *Batson*, 359 F.3d at 1196.

16            Second, once an underlying physical or mental impairment(s) that could

17            reasonably be expected to produce the individual's pain or other symptoms has been

18            shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of

19            the individual's symptoms to determine the extent to which the symptoms limit the

20            individual's ability to do basic work activities.  For this purpose, whenever the

21            individual's statements about the intensity, persistence, or functionally limiting

22            effects of pain or other symptoms are not substantiated by objective medical

23            evidence, the adjudicator must make a finding on the credibility of the individual's

24            statement based on a consideration of the entire case record.

25    SSR 96-7p para. 5 sub-para. 2; *see* 20 C.F.R. § 404.1529(a), (c); *see Batson*, 359 F.3d at 1196.

26    "The entire case record" includes medical opinions, the claimant's statements, *et seq*.  SSR 96-7p

27    para. 5 sub-para. 2.

28            "When additional information is needed to assess the credibility of the individual's

15

statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p para. 6.  SSR 96-7p also indicates additional factors that an ALJ should consider when assessing a claimant's credibility.  Specifically, SSR 96-7p requires the ALJ to consider (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's symptoms/pain, (3) factors that could aggravate the symptoms, (4) the effects of medication, (5) treatment other than medication, (6) any measures the claimant has taken other than treatment, and (7) any other factors concerning the claimant's functional limitations and restrictions.  *Id.*  The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints. *Id.*

If an ALJ determines a claimant's statements are not credible, he or she must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p para. 2 ¶ 5.  The Ninth Circuit requires "specific findings stating clear and convincing reasons."  *Batson*, 359 F.3d at 1196 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

### 2.   Walker's Testimony

The ALJ made two credibility determinations regarding Walker's testimony.  AR at 25.  In his first determination, he found her asserted limitations were overstated because she was very active with school, travel, volunteer work, and daily activities.  *Id.*  He made this determination using the factors under SSR 96-7p.  AR at 24-25.  Thus, he found she could sit for half an hour, did not know how long she could walk, felt she could lift one pound, could hold her neck steady for ten to fifteen minutes, and performed activities in pieces.  *Id.*  He noted she could drive for about 20 minutes but could not parallel park.  *Id.*  He also found she took Valium, Norco, and wore a Fentanyl duragesic patch.  *Id.*  He also noted she was hypersensitive to the weather.  *Id.*  And, he noted she alleged she could not sit or sustain repetitive activities for long.  AR at 25.

///

///

1   ///

2   ///

3       At the same time, however, he noted Walker daily performed one half hour of light chores

4   and one half hour of homework.[1]  *Id.*  He also noted she took evening classes at a community

5   college for six to seven hours per week, but missed about one class per week, and used disabled

6   student services when she had flare-ups of pain once or twice a week.  *Id.*  He found she used a

7   laptop rather than write by hand.  *Id.*  He also found that she had volunteered at two facilities since

8   1999, spending four hours a day twice a week, at one, and five hours once a week at the other.  *Id.*

9   He further found she traveled to Arkansas by train, in October 2005, to help at shelters after

10  hurricane Katrina, where she worked for 30 days, four-to-five days a week, for one-to-two hours a

11  day.  AR at 26.

12      An ALJ must state specifically which symptom testimony is not credible and what facts in

13  the record lead to that conclusion.  *Smolen*, 80 F.3d at 1284.  "To determine whether a claimant's

14  testimony regarding the severity of their symptoms is credible, the ALJ may consider, for example:

15  (1) ordinary techniques of credibility evaluations, such as . . . other testimony by the claimant that

16  appears less than candid; (2) unexplained or inadequately explained failure to seek treatment . . . and

17  (3) the claimant's daily activities.  *Id.*

18      In this case, the ALJ was sufficiently specific.  For example, he found that her assertion that

19  "she cannot do anything repetitively so no one would hire her," as well as her alleged inability to lift

20  more than one pound, were not credible based on her daily activities and her ability to attend school,

21  travel, and do volunteer work.  AR at 25-26.  During the hearing, the ALJ also noted that Walker

22  could care for her personal needs, engaged in physical labor, and took vacations.  *Id.*  He further

23  found her participation in school, travel, volunteer work, and daily activities were well documented

24  in the record and demonstrated that her asserted limitations were overstated.  AR at 26.

25      For his second credibility determination, the ALJ found Walker tended to over-explain her

26

27  _____

28  [1]      The ALJ is mistaken.  Walker consistently indicated she could do homework for up to an
    hour-and-a-half per day.  *See* AR at 89, 273, 274.  The error was in her favor, however, as the ALJ
    found a mere half hour of homework caused him to question her alleged limitations.

17

1   answers during the hearing and respond to questions which had not been asked.  *Id*.  The ALJ

2   specifically identified Walker's response to a question, that she could use a laptop but not hand-

3   write, as one provided without being asked.  *Id*.  The Court finds this determination valid because it

4   is based on the ordinary technique of credibility evaluation and the ALJ's assessment that Walker's

5   answers during her hearing were less than candid.  *See Smolen*, 80 F.3d at 1284.

6          Walker asserts the ALJ did not consider SSR 96-7p's factors in evaluating the credibility of

7   her statements regarding her symptoms.  Mot. at 15-16.  Walker argues the ALJ should have

8   considered the variability of her daily activities, her use of pain medications, and her chiropractic

9   treatment.  *Id*.  The Court has already found that the ALJ adequately weighed and considered her

10   daily and weekly activities, and her use of medications.

11          Walker is correct, however, in asserting that the ALJ should have, but failed to consider her

12   chiropractic treatment.  The Court considers whether the error was harmless.  The Court must

13   determine whether the ALJ's decision remains legally valid, despite the error.  *Carmickle v. Comm'r*

14   *of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).  An error is harmless when the remaining

15   reasoning and ultimate credibility determinations are adequately supported by substantial evidence

16   in the record.  *Id*.

17          Here, the ALJ's decision finding Walker only partially credible is valid, despite his error.

18   The ALJ did not wholly reject Walker's allegations regarding her symptoms, activities, and

19   disabilities, and considered them when making his credibility determination.  In contrast, Walker

20   only treated with a chiropractor for *three months* in 1999 and/or 2000, shortly after she lifted the

21   heavy garbage bag in 1999.  AR at 198.  Thus, the addition of this medical treatment to her evidence

22   pool would not have altered the ALJ's findings.  *See Batson*, 359 F.3d at 1197.  As such, the ALJ's

23   error in failing to consider Walker's chiropractic treatment was harmless.  The Court AFFIRMS the

24   ALJ's credibility determination regarding Walker testimony.

25              **3.      Lay Witness Testimony**

26          Walker argues the ALJ failed to consider lay testimony from her ex-husband and Luciana

27   Sandoval, a supervisor at one of her volunteer positions.  Mot. at 16.  Sandoval provided a letter

28   dated February 24, 2006, which purports to support Walker's assertions that due to chronic pain she

18

had difficulty performing repetitive telephoning and typing, needed a special chair for sitting, often missed work, or if she came in, could not perform her duties and would have to go home early.  AR at 135.  Her ex-husband declared to Walker's daily activities and in particular that she could not lift more than two or three pounds.  AR at 105-13.  The SSA did not respond to this issue.

"An ALJ is required to account for all lay witness testimony in the discussion of his or her findings."  *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (internal citation omitted)).  The Ninth Circuit further clarified that "we have never found harmless an 'ALJ's silent disregard of lay testimony about how an impairment limits a claimant's ability to work.' "  *Id.* (*citing Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)).

The ALJ completely disregarded Sandoval's and the ex-husband's testimony.  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  *Stout*, 454 F.3d at 1056.

The Court finds the ALJ did not disregard any competent lay testimony favorable to Walker.  With regards to the supervisor, although she did provide a letter addressed "To Whom It May Concern," AR at 135, in which she opined about her perceptions of Walker's abilities, she did not provide a declaration or an affidavit or any other evidence in a form that would constitute testimony.  Moreover, even if it were considered testimony for purposes of this analysis, it would not be testimony she is competent to provide.  Thus, it was not error for the ALJ to disregard this evidence.

As for Walker's ex-husband, although his evidence testimonial, he is incompetent to provide testimony to much of what he opines, i.e., that Walker "can't lift more than 2 or 3 lbs."  AR at 110.  As for those statements to which he is competent to testify, such as those discussing Walker's daily activities, their value is mitigated by the fact his exposure to her is of an extremely limited duration.  AR at 105.  It is thus difficult to comprehend how he can provide evidence of Walker's daily activities when by his own admission, he sees her less than daily.  Moreover, had the ALJ considered the ex-husband's statements, his daily activities testimony would have been merely cumulative to what Walker testified.  And, as for his opinion concerning her maximum capacity for

lifting, the ALJ would have likely given it no more weight than he gave Walker's statement that she could only lift one pound, which he disregarded in the face of substantial objective medical evidence to the contrary.  Thus, the Court can confidently conclude that a reasonable ALJ could not have reached a different disability determination for Walker after considering the ex-husband's declaration.  As such, it was harmless error for the ALJ to disregard the ex-husband's declaration.  The Court AFFIRMS the ALJ's RFC determination which did not involve considering Sandoval's or the ex-husband's statements.

> ### E.       The ALJ applied the wrong legal standards in determining Walker's RFC.

> #### 1.       Legal Standard

When a claimant requests a hearing before an ALJ to review a determination of their RFC, the ALJ determines it, rather than deferring to an earlier determination below.  20 C.F.R. § 404.1546(c).  The ALJ determines a claimant's RFC by considering their ability to meet certain physical, mental, sensory, or other requirements of work.  *Id*. § 404.1545(a)(4).  The goal is to assess the claimant's ability to do sustained work-related activities, on a regular and continuing basis, for eight hours a day, for five days a week, or an equivalent work schedule.  SSR 96-8p para. 1 ¶ 1, para. 6.  Thus, the ALJ considers any inability to sit, stand, walk, lift, carry, push, pull, or perform other physical functions, including manipulative or postural functions like reaching, handling, stooping, or crouching.  *Id*. § 404.1545(b).  The SSA also considers any inability to understand, remember, follow instructions, or respond appropriately to supervision, co-workers, or work pressures.  *Id*. § 404.1545(c).  And, the SSA considers any environmental impairments, e.g., visual or auditory, skin disorders, epilepsy which affect a person's ability to function within certain types of environments, such as those with extreme temperatures, *et seq*.  *Id*. § 404.1545(d).  The ALJ *must* consider each strength demand separately, and consider how each identified *medical* impairment or symptom, like pain, causes a *functional* limitation or impairment in a claimant's "exertional capacity."  SSR 96-8p para. 1 ¶ 6, paras. 10, 20-21.  This is true, even if the final RFC assessment will combine activities, such as considering a claimant's exertional capacity to walk/stand, lift/carry, or push/pull.  *Id*. para. 20.  The ALJ *must* do the same analysis for each non-strength and mental demand, and for any applicable environmental demands, to determine if a claimant has any "non-

exertional" limitations or impairments.  *Id*. para. 1 ¶ 6, paras. 10, 22-23.  The ALJ must keep in mind

///

some symptoms, like pain, may affect both strength demands and other demands, such as

manipulation or concentration.  *Id*. para. 24.

Lastly:

> The RFC assessment must include a narrative discussion describing how the
> evidence supports each conclusion, citing specific medical facts (e.g., laboratory
> findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing
> RFC, the adjudicator must discuss the individual's ability to perform sustained work
> activities in an ordinary work setting on a regular and continuing basis . . . and
> describe the maximum amount of work-related activity the individual can perform
> based on the evidence available in the case record.  The adjudicator must also explain
> how any material inconsistencies or ambiguities in the evidence in the case record
> were considered and resolved.

*Id*. para. 24; *Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Butler v. Barnhart*, 353 F.3d

992, 1000-04 (D.C. Cir. 2004); *Russell v. Astrue*, No. C07-2000-RAJ, slip op., 2008 WL 4542439,

*9-10 (W.D. Wash. Oct. 08, 2008); *Sharma v. Astrue*, No. C 07-4906 MEJ, slip op., 2008 WL

4540992, *6-7 (N.D. Cal. Oct. 6, 2008); *Crisman v. Astrue*, No. CV06-280S-MHW, slip op. 2008

WL 782606, *5-6 (D. Idaho Mar. 21, 2008).

This includes discussing all symptoms, such as pain, any supporting evidence for them, resolving

any inconsistences therein, and logically explaining how the symptoms affect the claimant's ability

to work.  SSR 96-8p paras. 25-26.

### b.      Analysis

Walker argues that the ALJ did not consider SSR 96-6p and 96-8p in determining her RFC.

Mot. at 17-18.  Walker specifically notes the ALJ did not consider her ability to perform "sustained

work-related physical and mental activities in a work setting on a regular and continuing basis."

Mot. at 17 (*citing* SSR 96-8p).  The SSA argues that this consideration is implicit within an RFC

determination.  Cross-Mot. at 3.  The Court disagrees and notes that the ALJ did not sufficiently

1    address Walker's capabilities concerning each strength demand or her ability to perform sustained

2    ///

3    activities, and erroneously left out narrative discussions describing how the evidence fits each

4    conclusion.

5        The Court first considers whether the ALJ properly considered the seven strength demands.

6    Turning first to sitting, the ALJ noted Walker felt she could sit for half hours, but did not connect

7    this observation to his RFC determination, discuss it in a narrative, nor discuss how it impacted her

8    functional capabilities.  AR at 25.  In regards to standing, the ALJ failed to address it.  In regards to

9    walking, the ALJ referenced Walker's own assertion that she did not know for how long she could

10   walk, but failed to analyze it.  *Id.*  With regards to pushing and pulling, the ALJ did not separate

11   these strength demands.  AR at 26.  He stated only that she could occasionally perform these

12   activities but failed to provide any narrative discussion.  *Id.*

13       For lifting and carrying, the ALJ concluded Walker had the RFC to lift 20 pounds at most,

14   10 pounds repetitively, was limited to simple repetitive tasks at an average pace, and could

15   occasionally crouch, crawl, and kneel.  AR at 26.  While Drs. Pon's and Williams' evaluations

16   support the ALJ's assessment, the ALJ did not include a narrative discussion nor address

17   contradictory evidence in the record.

18       The ALJ found Walker had an RFC for "light" work.  Applying a harmless error analysis, the

19   Court is unable to find a reasonable ALJ could not have made a different determination for Walker,

20   had they properly considered her seven strength demands.  *See Stout*, 454 F.3d at 1056.[2]  The Court

21   REVERSES the ALJ's RFC determination and REMANDS this matter for a redetermination

22   consistent with this Order.

23   **II.    The ALJ applied the incorrect legal standard in determining Walker's past relevant**

24   **work.**

25       In assessing whether a claimant is disabled, the SSA determines his or her RFC and his or

26   _____

27   [2]    Although the Ninth Circuit has never expressly adopted a harmless error analysis for an error

28   made in assessing the seven strength demands, harmless error has been used in a variety of contexts
     involving Social Security hearings, and is generally applied to errors arising in them.  *See Batson*,
     359 F.3d at 1197; *Stout*, 454 F.3d at 1056; *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

1   her past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If he or she can still do his or her past

2   relevant work, the SSA will find he or she is not disabled.  *Id.*  The RFC determination precedes the

3   past relevant work determination.  *Id.* § 416.945(a)(5).  Once the ALJ had determined Walker's

4   RFC, he proceeded to determine her past relevant work.  AR at 26.  "Past relevant work" is work a

5   claimant performed within the past 15 years, that was a "substantial gainful activity," and that lasted

6   long enough for them to learn to do it.[3]  *Id.* § 404.1560(b)(1).  The determination may involve

7   evidence provided by the claimant, persons familiar with their work, vocational experts, or

8   Department of Labor materials, such as the Dictionary of Occupational Titles.  *Id.* § 404.1560(b)(2).

9   The determination does not involve a claimant's "vocational factors of age, education, and work

10  experience or whether [their] past relevant work exists in significant numbers in the national

11  economy."  *Id.* § 404.1560(b)(3).

12          At Walker's hearing, the ALJ asked the vocational expert whether a person of Walker's "age,

13  education and work experience" would be able to perform her past relevant work.  AR at 26, 290.

14  The vocational expert testified he believed Walker could not perform her previous jobs.  AR at 291.

15  The ALJ credited the vocational expert's testimony and found that Walker could not perform her

16  past relevant work.  AR at 26.

17          While vocational factors may be considered for the fifth-step determination of "other work,"

18  *see* 20 C.F.R. § 404.1560(c), *this is absolutely prohibited for the fourth step determination of "past*

19  *relevant work," see id.* § 404.1560(b)(3) (determination does not involve a claimant's vocational

20  factors of age, education, or work experience).  The ALJ applied the wrong legal standard when he

21  used vocational factors to determine Walker's past relevant work.  However, the ALJ ultimately

22  determined that Walker was *unable to perform any past relevant work*.  Thus, as the error was to her

23

24

25

26  ───────────────
    [3]      A person who performs substantial gainful activity ("SGA") is not disabled.  20 C.F.R.

27  § 404.1520(b).  "Substantial gainful activity is work activity that is both substantial, i.e., involves
    significant physical or mental activities, and gainful, i.e., work activity performed for pay or profit.

28  *See* 20 C.F.R. § 404.1572."  *Tackett*, 180 F.3d at 1098 n.4.  It involves doing significant physical or
    mental activities.  20 C.F.R. § 404.1572(a).  Actual pay or profit is not required.  *Id.* § 404.1572(b).

benefit, it was harmless.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).[4]

**III.     The Court remands for further development of the Administrative Record**

Walker requests as relief that the Court remand for an immediate determination of benefits, alleging there is no need to further develop the Administrative Record, under *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  Mot. at 20-21.  The SSA opposes.  Cross-Mot. at 3.  As there is clearly a need to further develop the record, the Court declines Walker's request to remand for an immediate award of benefits.

**CONCLUSION**

Accordingly, the Court GRANTS in part and DENIES in part plaintiff Catherine Walker's Motion for Summary Judgment [Docket No. 12] and GRANTS in part and DENIES in part defendant's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment [Docket No. 13], REVERSES defendant's decision regarding whether Walker is eligible for disability benefits, and REMANDS this matter to defendant for findings and to redetermine Walker's RFC consistent with this Order.


IT IS SO ORDERED.


September 30, 2008

Saundra B Armstrong
Saundra Brown Armstrong
United States District Judge

---

[4]     In her administrative hearing, after determining her RFC, the ALJ determined Walker could not perform her past relevant work, *see* 20 C.F.R. § 416.945(a)(5); AR at 26-28, but he then determined she could perform some other work, *see* 20 C.F.R. § 416.920(e); AR at 26-28, finding her not disabled.  As the Court is remanding for a redetermination of her RFC, the Court need not address whether to remand for a redetermination of "past relevant work" or "other work."  On remand, defendant shall make this decision after redetermining Walker's RFC.